## In re MARJORIE LILA STEELE.

Kansas City Court of Appeals, June 20, 1904.

PARENT AND CHILD: Custody of Child: Welfare. While courts appreciate the claim of the mother to her infant child, such claim can not overcome the consideration of the child's welfare and permit a girl of tender years to become a member of a home affected with a moral taint.

Original Proceedings by Habeas Corpus.

CHILD REMANDED.

*James C. Williams* for relator.

(1) "In a contest for the possession of the person of a minor child, the welfare of the child is always the controlling consideration with the courts." In the matter of Berenice S. Scarritt, 76 Mo. 565; In re Laura Doyle, 16 Mo. App. 159. In matter of Francis G. Delano, 37 Mo. App. 185; In re Blackburn, 41 Mo. App. 631.

*Karnes, New & Krauthoff, C. A. Keith* and *William Aull* for respondents.

(1) Little importance is attached to the so-called right to a child. "The welfare of the child and not the technical legal right is the criterion by which to determine who should have the custody of the child." Church on Habeas Corpus, sec. 446; In re Lydia Blackburn, an

infant, 41 Mo. App. 622; 2 Bishop on Marriage, Divorce and Separation, sec. 1193; Schouler on Dom. Rel. (3 Ed.), secs. 248, 251; Rogers on Domestic Relations, sec. 567, p. 527 and cases cited; Chapsky v. Woods, 26 Kan. 650; West v. West, 94 Mo. App. 683; Richards v. Collins, 45 N. J. Eq. 283; In re Bullen, 28 Kan. 787; In re Petition of Frank P. Bort, 25 Kan. 311. (2) In a case of doubt the court will not experiment on a change. Schouler on Dom. Rel. (3 Ed.), pp. 248, 339, note 1; In re Lydia Blackburn, an infant, 41 Mo. App. 622; In re Bullen, 28 Kan. 787; Coffee v. Black, 82 Va. 567. (3) The same general rules govern this question whether it arises as incident to divorce, in equity or on habeas corpus proceeding. The parent's right to the custody of the child is not like the right of property, an absolute and uncontrollable right. Chapsky v. Wood, 26 Kan. 650; United States v. Greene, 3 Mason 482; Foster v. Alston, 6 How. (Miss.) 461. (4) Marjorie is happy now and all her surroundings are suitable and safe and all is assured. The proposed change is but an experiment which seems in no way to promise a better life or anywise to be to the welfare of the child. In re Lydia Blackburn, 41 Mo. App. 622; Chapsky v. Wood, 26 Kan. 650; Coffee v. Black, 82 Va. 567. (5) An adulterous parent, divorced for the proven offense, should only in the rarest circumstances be entrusted with the custody of the child. 2 Bishop, Marriage, Divorce and Separation, sec. 1198; Helden v. Helden, 7 Wis. 264; Kremelberg v. Kremelberg, 52 Md. 553.

ELLISON, J.—The relator obtained a writ of habeas corpus returnable to the October term of this court. The proceeding has been continued from time to time and testimony taken by each party, and has now been argued and submitted by the respective counsel. The relator is the mother of Marjorie L. Steele, a female child nine years old; and the respondent, Myrtie Lake (wife of respondent Louis Lake), is the child's aunt,

she being a sister of Stewart Steele, the child's father. The relator and Stewart Steele were married in Illinois in the year 1893 and Marjorie was born of that marriage. Afterwards, relator became acquainted with one Harry L. Cunningham, and her relations with him became so offensive, improper and unlawful that her husband procured a divorce from her in Illinois on the ground of adultery. The judgment was by default, though there was personal service on her. The custody of Marjorie was awarded to the husband, who took her to the home of his sister, one of the respondents, to be cared for, protected and educated. Afterwards he died, and Marjorie was thus left in the sole care of respondents. It seems that Cunningham at the time of his improper attentions to relator was a married man, and his family resided in Ohio. He abandoned his family and his wife obtained a divorce from him in the courts of Ohio, their only daughter being given to the custody of the wife. Shortly after this, he and relator were married, and are now living in Chicago, Illinois. The object of this proceeding is to take the child from her aunt to the home of relator in Illinois and to keep her in the family relation, association and influence which has been formed by the alliance thus made between relator and Cunningham.

An alternative writ of mandamus was issued by Judge Davis of the Lafayette circuit, at the instance of this relator. After a hearing, the judge remanded the child to the custody of these respondents, when an application was made here as above stated.

While courts recognize and appreciate the claim of the mother to her child, yet no mere sentiment is allowed to overcome a consideration for the welfare of the child itself. This subject was fully covered in an elaborate and well-considered opinion by Judge GILL in the case of In re Blackburn, 41 Mo. App. 622. Besides that case, reference may be had to the following authorities: Church on Habeas Corpus, sec. 446; 2 Bishop on

Mar. and Divorce, sec. 1193; Schouler on Dom. Relat. (3 Ed.), secs. 248, 251; Rogers on Dom. Relat., sec. 567, and cases cited; Chapsky v. Woods, 26 Kan. 650; Richards v. Collins, 45 N. J. Eq. 283. In the present instance, respondents are shown to be people of high character and respectability. They are moral people and in every way fitted for rearing and moulding the character of a young girl. They are likewise shown to be abundantly able in a financial way. They have no children of their own and the strongest mutual attachment has grown up between them and Marjorie.

Something was said in argument as to the poor financial condition of relator and her present husband and of their uninviting surroundings in the city of Chicago. But leaving out of view considerations of that nature, we are satisfied that the moral taint of that home is such as to render it unfit for the association sought to be forced upon Marjorie. The relator has been shown to be guilty of adultery, and though she is the mother, yet her abhorrent conduct, of itself, affords the strongest reasons for refusing her application for the custody, society and association of the child. 2 Bishop's Mar. and Divorce, sec. 1198; Helden v. Helden, 7 Wis. 296; Kremelberg v. Kremelberg, 52 Md. 553. The evidence discloses that even after the divorce she kept up her relations with Cunningham and that upon one occasion, when she made a visit to the child in Lafayette county, before her marriage to Cunningham, she permitted him to accompany her and that she occupied a room at a hotel adjoining to and connected with his.

In the view we have taken of the proper disposition of the case, it is unnecessary to pass upon several objections to evidence which were stated by relator's counsel.

We entertain no doubt whatever that the best interest, future welfare and happiness of the child demand that she remain with the respondents; and we therefore remand her to their custody. The other judges concur.