# TERRITORY *v.* ANTONIO DELA CRUZ PALAI.

## No. 874.

EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

HON. C. F. PARSONS, JUDGE.

ARGUED JANUARY 4, 1916.                    DECIDED FEBRUARY 1, 1916.

ROBERTSON, C.J., WATSON, J., AND CIRCUIT JUDGE ASHFORD
IN PLACE OF QUARLES, J., ABSENT.

WORDS AND PHRASES—*"unlawfully."*

The words "unlawful" and "unlawfully" are commonly used as meaning "without authority of law" or "not permitted by law."

CRIMINAL LAW—*explosives—injury to property.*

In a prosecution under section 4028, R. L. 1915, charging the unlawful use of dynamite with intent to injure or destroy prop‑ erty, it is not necessary to allege or prove that the property was actually injured.

SAME—*evidence—specific intent.*

The burden is on the prosecution to prove that an act charged to have been done with a specific intent was done with that intent. But it is sufficient in such cases to prove facts from which such intent may be inferred.

STATUTES—*penal laws—construction—intention.*

The mere fact that the language used in a penal statute is open to two constructions, one of which would include the acts charged and the other not, does not require that the latter view must necessarily prevail, and the former view will be adopted if the court is well satisfied that such was the sufficiently expressed intention of the legislature.

APPEAL AND ERROR—*objections to evidence—exceptions.*

An exception to the admission of evidence, to be available in an appellate court, should point out the particular part of the evidence which was objected to. If any of the evidence was admis‑ sible, a general objection is not sufficient.

TRIAL—*instructions*—*motive.*

    Evidence of motive, or lack of motive, being a matter properly to be considered by the jury in a criminal case, an appropriately framed instruction on the point, if requested, should be given. The instruction requested in this case was properly refused because incomplete and misleading.

SAME—*extra judicial statements*—*restriction of relevant evidence.*

    The operation of evidence of an extra judicial statement relevant on the question of motive will not be limited by an instruction where the evidence went in generally and without objection.

OPINION OF THE COURT BY ROBERTSON, C.J.

The defendant was convicted upon an indictment under R. L. 1915, Sec. 4028, charging that on the 1st day of April, 1915, in the district of South Hilo, county of Hawaii, he did unlawfully use dynamite with intent to injure, destroy and damage a certain sugar mill, the property of the Onomea Sugar Company, and brings the case to this court upon exceptions. After the case was submitted counsel were asked to file briefs upon a point which had not been presented, namely, whether in a case of this kind it is incumbent upon the prosecution to allege and prove actual injury to property as a result of the unlawful use of the explosive. The indictment, it will be observed, alleged the unlawful use of dynamite with intent to injure the property, and the evidence adduced at the trial showed that there had been no explosion and that no actual damage had been done to the mill in question. Section 4028 provides that "Any person unlawfully using dynamite or other explosive chemical or substance for the purpose of inflicting bodily injury upon, or to terrify and frighten, any person, or to injure or destroy any property, or damage the same in any manner, shall be liable," etc.

Counsel for the defendant contends that so far as this case is concerned it is as though the statute read "Any person unlawfully using dynamite to injure, destroy or damage

any property," etc., and that as at the time the statute was first enacted (June 15, 1893) the only unlawful use of dynamite was its use in committing malicious injury, actual injury must be shown, and that the word "unlawfully" as used in section 4028 was not intended as a prohibition of the acts therein mentioned. He also argues that the fact that in the revision of 1905, and again in the revision of 1915, the provisions of the act of 1893 were included in the same chapter with the provisions relating to the offense of malicious injury adds force to his contention: that even if the words "for the purpose," as used in section 4028, are the equivalent of "with the intent" they are not grammatically connected with the words "to injure or destroy any property;" and, further, that a use of dynamite *with intent to injure* property is not a *use to injure* it.

It is not necessary, in order to give the statute a proper meaning and operation, that the acts mentioned in it should be made unlawful by another statute. "A statute often speaks as plainly by inference, and by means of the purpose which underlies the enactment, as in any other manner, and whenever it appears by necessary inference from what is expressed, that a given act or acts are opposed to the policy of the law, and will defeat its purpose, or the object had in view by the legislature, such acts should be held to be thereby prohibited." *U. S.* v. *O'Connor,* 31 Fed. 449, 451. The words "unlawful" and "unlawfully," where the context or object of a statute requires, may be given a restricted meaning and construed as having reference only to acts expressly prohibited by statute, but such restricted meaning is by no means a necessary one for those words are commonly used in a wider sense, as the equivalent of "without authority of law" or "not permitted by law," and as inclusive of actionable violations of civil rights whether or not they be punishable criminally as well. *State* v. *Tinkler,* 72 Kan. 262; *People* v. *Loveless,* 84 N. Y. S. 1114; *Com.* v.

*Hunt,* 4 Met. 111, 123; *State* v. *Savant,* 115 La. 226; *Terrell* v. *State,* 86 Tenn. 523, 531; *Martens* v. *Reilly,* 109 Wis. 464, 473; *Surles* v. *Sweeney,* 11 Ore. 21, 24. The statute as passed in 1893 was entitled "An act relating to the unlawful use or possession of explosives," and it had no apparent relation to the offense of malicious injury. In the Penal Laws of 1897 the two statutes were widely separated, and the fact that in the revisions of 1905 and 1915 they were incorporated in one chapter should not affect the construction. In other words, the provisions of sections 4028 to 4031 of the Revised Laws mean now just what they did when they were first enacted. Upon a strict grammatical construction, probably, the words "for the purpose" in section 4028 would be held to be connected only with "inflicting bodily injury" upon persons, but the strict rules of grammar should not be permitted to defeat the legislative intent. The words "purpose" and "intent," according to the dictionaries, are synonyms. And see *Smith* v. *State,* 70 Tenn. 614, 619; *Phillips* v. *State,* 45 S. W. (Tex.) 709; *Perugi* v. *State,* 104 Wis. 230, 242; *Anderson* v. *Hooks,* 9 Ala. 704, 709. And we take the view that section 4028 was regarded by the legislature as providing that any person unlawfully using dynamite or other explosive chemical or substance for the purpose of injuring or destroying (or with the intent to injure or destroy) any property, should be punished as provided. The placing of such explosive in position for the purpose of injuring or with the intent to injure, another's property would constitute an unlawful use within the meaning of the statute though there be no explosion and no actual damage done. We think this view does not transgress the rule that penal statutes are to be construed strictly, nor the rule that the intent of the legislature is to be gathered primarily from the words used in the act. If the language used in a penal statute is susceptible of two equally probable meanings that interpretation

which operates in favor of life or liberty will be preferred, but the mere fact that the language used is open to two constructions, one of which would include the acts charged and the other not, does not require that the latter view must necessarily prevail, and the former view will be adopted if the court is well satisfied that such was the sufficiently expressed intention of the legislature. *U. S.* v. *Hartwell,* 6 Wall. 385, 396; *U. S.* v. *Reese,* 92 U. S. 214, 219; *U. S.* v. *Harris,* 177 U. S. 305, 309; *Northern Securities Co.* v. *U. S.,* 193 U. S. 197, 358. "While it is true that before a case can be held to fall within a penal statute, the case must come within the letter and spirit of the statute, yet if it comes within the spirit, and also within one reasonable interpretation of the letter, of the statute, it is sufficient, although there may be a literal construction that might be put upon the statute which would not include the case." *U. S.* v. *Williams,* 159 Fed. 310, 313; *U. S.* v. *Hocking Valley R. Co.,* 194 Fed. 232, 243. The act of 1893 was enacted at a time of political turmoil. It penalized the possession of explosives with the intent to use the same unlawfully as well as the unlawful use thereof, and we believe that a different form of expression would have been used if the intention of the law makers had been to condemn the unlawful use of explosives against property only when actual damage ensues.

Under exceptions to the denial of a motion for a directed verdict of acquittal and to the verdict rendered counsel for the defendant contends that the *corpus delicti* was not proven by more than a scintilla of evidence. There was testimony from which the jury were authorized to find that at about six o'clock on the morning of April 1, 1915, at the mill of the Onomea Sugar Company, a bundle was found traveling on the cane carrier leading from the end of the flume by which cane is sent in from the fields and the crusher in the mill; that it was seen and taken out from

near the rollers by an employee whose post of duty was at that point; and that on examination it was found to be a gunny bag tied up with wire and containing, besides a few stones, two sticks of dynamite with explosive caps and fuse attached wrapped in a newspaper and two paper bags and tied with string. The claim that there was no substantial evidence to support a finding that the bag contained dynamite and that it was used with the intent to injure property is not sustained. There was direct testimony that the substance was dynamite. The intent with which an act is done may be inferred from the nature of the act and the circumstances surrounding it. From the evidence in the case the jury were at liberty to find that someone had placed the dynamite in the flume leading to the mill with the intent and expectation that it would reach the mill, be exploded by concussion, and damage the property. "The burden is on the state to prove, by either direct or circumstantial evidence, that the act was done with the requisite specific intent. But it is sufficient in such cases to prove facts from which the specific intent may be inferred." 12 Cyc. 153. See *Lo Toon* v. *Territory*, 16 Haw. 351; *Malone* v. *State*, 169 Ind. 72; *Talbert* v. *State*, 25 So. (Ala.) 690. There was ample evidence from which the jury could have found, as they did find, that the *corpus delicti*, the act done with the specific intent, was established. Nor can we sustain the contention of counsel that the verdict was against the evidence in that it did not connect the defendant with the commission of the act. We deem it unnecessary to prolong this opinion with a review of the evidence of the circumstances relied on by the prosecution. True, the connecting evidence was circumstantial, but it was supported by testimony tending to show motive on the defendant's part— dissatisfaction and ill-will toward the company and its manager—and also by testimony as to a conversation between the defendant and his wife overheard at the jail after

his arrest in the course of which he said to her, "Keep quiet. Talk easy. They can't prove it. You always say it was a plain paper. That is alright, we want them to put (send) us back to our country." We have read the transcript of testimony carefully, and find that the evidence was sufficient to sustain the verdict.

An exception was taken to a ruling made by the trial court by which Mr. Moir, the manager of the company, was permitted to testify to what was said in a conversation had between himself and the defendant, who is a Portuguese, on the day prior to the commission of the alleged offense. It appeared that the conversation was had in part directly in the English language and in part through an interpreter who spoke both the English and Portuguese languages. Mr. Moir testified that the defendant seemed to · understand what he, Moir, said to him, and there was other testimony tending to show that the defendant has some knowledge of English. The defendant himself gave his version of the conversation, and he did not claim to understand no English. The interpreter also testified as to the conversation. The three versions varied somewhat. A part, at least, of Moir's statement as to the conversation was clearly admissible, and as the objection was a general one, interposed to his testifying to it at all, and there was no motion to strike any part of it, we cannot say error was committed. "As a rule objections to evidence, to be available on appeal, must point out the particular part of the evidence which is objected to. If any of the evidence was admissible, a general objection is not sufficient." 3 C. J. 818.

Another exception was taken to the refusal of the court to give an instruction (No. 9) on behalf of the defendant to the effect that in a prosecution depending upon circumstantial evidence, in order that the accused may be convicted, the evidence must exclude every reasonable hypothesis of innocence. This point was correctly covered by

140 · FEBRUARY, 1916.

the charge given by the court and there was no need of repeating it in the form requested by the defense which, perhaps, was a shade too strong.

Another exception was taken to the refusal of the court to give defendant's requested instruction No. 10, as follows: "The jury are instructed that if they should find that the evidence fails to show sufficient motive to commit the crime charged, on the part of the accused, this is a circumstance in favor of his innocence. In this case, therefore, if the jury find upon careful examination of the evidence that it fails to show sufficient motive on the part of the accused to commit the crime charged against him, then this is a circumstance which the jury may consider in connection with all the other evidence in the case in making up their verdict." Counsel for the prosecution contend that the instruction was properly refused because it was "argumentative," and "an instruction upon a question of fact," also that the subject of motive was sufficiently covered in the charge of the court. The only reference in the charge, however, to motive was that its existence was asserted on one side and denied on the other. We think the instruction was not argumentative, nor a comment upon the character, quality or strength of the evidence within the meaning of the statute. R. L. 1915, Sec. 2435. But we are of the opinion that the instruction, in the form requested, was incomplete and misleading, and was properly refused on that account. Evidence of motive or lack of motive for the commission of a crime is generally admissible on the trial of criminal cases and is a proper subject for consideration by the jury, though proof of motive forms no part of the burden devolving on the prosecution in making out a case. It being a proper matter for the jury to consider, it would seem to follow that an appropriately framed instruction on the point, if requested, ought to be given. In cases depending on circumstantial

evidence motive, or the absence thereof, becomes important on the point whether the criminal act in question was committed by the defendant. But the lack of evidence of motive becomes unimportant if the jury are satisfied from the evidence beyond a reasonable doubt of the guilt of the accused, and an instruction on the subject of motive which omits this phase is apt to be misleading, for in such case a motive may be inferred from the fact of the commission of the crime.

Another exception relates to the ruling of the court in refusing to give defendant's requested instruction No. 11, to the effect that a certain statement testified on rebuttal to having been made by the defendant after his arrest tending to show ill-will against Mr. Moir should be considered by the jury only as bearing on the credibility of the defendant as a witness and not generally on the question of his guilt or innocence. The defendant had admitted making the statement but denied that it had reference to Mr. Moir. The testimony went in without objection so that no question as to its non-admissibility on the ground of remoteness is presented. The testimony being before the jury under these circumstances we think its effect was not to be limited as stated in the refused instruction. "As the relevancy of the extrajudicial statement is dependent upon that of the mental state, the probative utterance may precede, accompany, or follow the principal fact, if any, which the mental state assists to characterize or explain. So long as the time of the declaration is not too remote to be relevant, a considerable interval will not be treated as fatal to admissibility." 4 Chamberlayne, Ev., Sec. 2656. Aside from any question of admissibility, then, the testimony was of a character proper for consideration by the jury in connection with the other evidence tending to show motive.

The charge of the court to the jury covered the case fairly and correctly.

All the exceptions have been considered, and they are overruled.

*C. S. Carlsmith,* Deputy Attorney General (*W. H. Beers,* County Attorney of Hawaii, and *S. S. Rolph,* Deputy County Attorney of Hawaii, with him on the brief), for the Territory.

*J. W. Russell* for defendant.